IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RICOH USA, INC.,<br>300 Eagleview Boulevard,<br>Exton, Pennsylvania, 19341,<br><br>Plaintiff,<br><br>vs.<br><br>ONE2ONE COMMUNICATIONS, LLC d/b/a<br>ONESOURCE,<br>900 Asbury Drive<br>Buffalo Grove, Illinois 60089<br><br>Defendant. | Case No.: _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Ricoh USA, Inc. ("Ricoh" or "Plaintiff"), by and through its undersigned

counsel, Duane Morris LLP, brings the following Complaint against One2One Communications,

LLC d/b/a OneSource ("OneSource"), and, in support hereof, states as follows:

## THE PARTIES

1.      Plaintiff Ricoh is a corporation organized and incorporated in the State of

Delaware, maintaining its principal place of business at 300 Eagleview Boulevard, Exton,

Pennsylvania, 19341, and transacting business in this judicial district. For diversity purposes,

Ricoh is a corporate citizen of Delaware and Pennsylvania.

2.      On June 1, 2007, Ricoh Printing Systems America, Inc. ("RPSA") acquired

InfoPrint Solutions Company, LLC ("InfoPrint"). On April 1, 2011, InfoPrint changed its legal

corporate name to Ricoh Production Print Solutions, LLC ("RPPS"). On March 28, 2014, Ricoh

acquired full ownership of RPPS through an asset purchase agreement. Ricoh is the successor to

RPPS and RPPS was duly canceled in the state of its incorporation, Delaware, on March 13, 2015.

3.      OneSource is a limited liability company organized under the laws of the State of Illinois, maintaining its principal place of business at 900 Asbury Drive, Buffalo Grove, Illinois 60089, and transacting business in this judicial district at that address. Upon information and belief, OneSource's sole members are Miguel Martinez and Tom Mason, each of whom is a citizen of the State of Illinois. For diversity of citizenship purposes, therefore, OneSource is a citizen of Illinois, based on the citizenship of its members.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a) because it involves a dispute between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5.      Venue is appropriate in this judicial district because a substantial part of the events or omissions giving rise to the claims in this action occurred in and/or the harm being caused is being suffered in this judicial district.

## FACTUAL ALLEGATIONS

### The Sale of Ricoh's IP5000 Print System

6.      Ricoh offers workplace solutions and digital transformation services designed to help manage and optimize information flow across its clients' businesses. The services and solutions Ricoh offers its clients include, but are not limited to: facilities and workplace management services; the sale and maintenance of a wide range of scanners, copiers and printers; document imaging and document conversion services and solutions; cloud and IT services and solutions; business process outsourcing services and solutions (*e.g.*, management of

2

accounts payable/receivable; providing mailroom delivery and mail-related services; graphic design services); and a host of other services and solutions which help customers manage work flows and run their businesses more efficiently.

7.     On November 19, 2008, Ricoh's predecessor company, InfoPrint, sold an IP5000 Print System (the "Print System") to OneSource.

8.     The Print System is a continuous form inkjet printer that offers a variety of capabilities, including monochrome, vibrant color, and MICR. The Print System is part of a range of platforms that share a reliable core technology, but can be configured to meet different needs and volume requirements. The versatility of the Print System makes them ideal for transactional, commercial and book printers, as well as direct mailers.

9.     In connection with the sale of the Print System, InfoPrint and OneSource entered into the "InfoPrint Solutions Company Customer Agreement" (the "Agreement") and the "InfoPrint Solutions Company Master Services Attachment for Service Elite," (the "MSA"), true and correct copies of which are attached hereto at **Exhibit A & B**.

10.     The Agreement and MSA set forth the terms and conditions under which Ricoh provided maintenance and services on the Print System during the parties' relationship and OneSource's obligations and instructions on how to properly manage and utilize the Print System.

11.     More specifically, the Agreement provided that, in addition to the sale of the Print System, Ricoh would provide additional terms for "Products and Services in documents called 'Attachments' and 'Transaction Documents' which are also part of this Agreement." Ex. A, at § 1.2. Every "transaction" has one or more associated "Transaction Documents" – *e.g.*, an invoice, statement or work, or change authorization. *Id.* Thus, once Ricoh provides a product or service to

OneSource's Print System, the "Product or Service become subject to this Agreement." Ex. A, at § 1.2.

12.     Section 1.4 of the Agreement sets forth OneSource's payment obligations when Ricoh provided "Products and Services" or maintenance to the Print System: "[a]mounts are due upon receipt of invoice and payable as [Ricoh] specifies in a Transaction Document. You agree to pay accordingly, including any late payment fee." *Id.* at § 1.4.

13.     Further, the Agreement listed prohibited activities and actions that, if taken by OneSource, would absolve Ricoh from any liability under the Agreement.  In particular, the Agreement provided that Ricoh would not be responsible for and/or had no obligation regarding any claim based on any of the following:

a.  "Anything you provide which is incorporated into a Product or [Ricoh's] compliance with any designs, specifications, or instructions provided by you or by a third party on your behalf;

b.  Your modification of a Product, or [a Ricoh] Program's use in other than its Specified Operating Environment;

c.  The combination, operation, or use of a Product with other products not provided by [Ricoh] as a system, or the combination, operation or use of a Product with any product, data, apparatus, or business method that [Ricoh] did not provide, or the distribution, operation or use of a Product for the benefit of a third party outside your Enterprise; or

d.  Infringement by a non-[Ricoh] Product or an Other [Ricoh] Program alone."

Ex. A, at § 1.7.

14.     The Agreement further provided that Ricoh would not cover repairs and exchanges that related to, among other things: "Machines damaged by misuse, accident, modification, unsuitable physical or operating environment, or improper maintenance by [OneSource]," "failures caused by a product for which [Ricoh] is not responsible," and/or "service of Machine alterations." Ex. A, at § 5.3.

15.     In addition to the Agreement's express prohibitions, the MSA also outlined specific actions for which Ricoh shall not cover and/or provide services support. Those included:

    a.   "Machine installation, engineering change activity, or preventative maintenance;

    b.   Service of features, parts, or devices not supplied by either a) the Machine's original manufacturer or b) [Ricoh] during the performance of this Service;

    c.   Service of a Machine damaged by misuse, accident, modification, unsuitable physical or operating environment, or improper maintenance by [OneSource]; or

    d.   Failures caused by a product for which [Ricoh] is not responsible."

Ex. B, at page 6.

16.     The Agreement further provided that "[e]ither [party] may terminate this Agreement if the other does not comply with any of its terms, provided the one who is not complying is given written notice and reasonable time to comply." *See* Ex. A, at § 1.10. Ricoh was also permitted to terminate or withdraw any services to OneSource if OneSource failed to meet its payment obligations so long as Ricoh provided three months' written notice. Ex. A, at § 5.6.

17.     OneSource also agreed to a "Limitation of Liability" provision, which, in addition to limiting Ricoh's liability to no greater than $100,000, stated that Ricoh cannot be liable under any circumstance for the following categories of damages:

    a.   Loss of, or damage to, data;

    b.   Special, incidental, or indirect damages or for any economic consequential damages; or

    c.   Lost profits, business, revenue, goodwill, or anticipated savings.

Agreement at § 1.8.

18.     The Agreement also provided that the "laws of the State of New York" shall govern the parties' relationship. Ex. A, at § 1.11.

**Ricoh and OneSource's Business Relationship**

19.     Ricoh diligently provided services to OneSource in connection with the Print System for more than 15 years.

20.     During that period of time, Ricoh regularly provided all required maintenance and troubleshooting with respect to the Print System -- even under circumstances where the issues with the Print System were the result of OneSource's misuse of the Print System.

21.     By way of example, approximately 7-8 years ago, the Print System was damaged as a result of OneSource's use of non-Ricoh ink.  Ricoh remediated the damage that OneSource's own actions caused to the Print System, at a cost to Ricoh of $60,000-$70,000.

22.     OneSource refused to reimburse Ricoh for this significant expense, despite clear language in the parties' contracts absolving Ricoh of responsibility for servicing damage caused by non-Ricoh ink. *See* Ex. A, § 1.7, 5.3; Ex. B, at page 6.  Nevertheless, Ricoh continued servicing the Print System for many years thereafter, consistent with the Agreement and MSA, and with the same high level of service that Ricoh had always demonstrated in its performance.

**OneSource's Refusal to Pay for Rendered Services**

23.     Even though OneSource engaged in prohibited conduct by using non-Ricoh ink approximately 7-8 years ago which damaged the Print System, Ricoh continued to service and maintain the Print System based on Ricoh's and OneSource's long standing and beneficial business relationship.

24.     In April 2023, however, OneSource, without notice, alerted Ricoh that it was refusing to pay any outstanding invoices for services Ricoh rendered on the Print System.

25.     In a subsequent meeting, OneSource's Chief Operating Officer, Tom Mason ("Mr. Mason"), stated that OneSource had been dissatisfied with Ricoh for "many years" and

expressed his dismay that Ricoh would not agree to repurchase the Print System that was, at the time, more than 15 years old with a re-sale value of less than $10,000.00.

26.     OneSource also indicated that it would withhold all payments under outstanding invoices for Ricoh's services until the Print System was operating properly.

27.     In reality, the Print System -- despite the fact that it was, by that point, 15 years old and had been continuously used by OneSource during that time -- was operating properly leading up to April 2023.

28.     Ricoh's records reveal that Ricoh swiftly dealt with issues as they arose with this older Print System, and the Print System was operational during the period of time when Mr. Mason alleged that OneSource was dissatisfied.

29.     Despite the evidence that the Print System was, given the age of the Print System, operating at more than acceptable levels, Ricoh took immediate action to address the concerns raised by Mr. Mason.

30.     For example, between April 2023 and June 2023, Ricoh brought in senior specialists and skilled support technicians to inspect the Print System.  Ricoh's team rebuilt key areas of the Print System, including, but not limited to, maintenance stations, print heads, caps, wipers, pumps and solenoids and proactively replaced other parts even though they were deemed fully operational.

31.     Following these repairs, Ricoh's services team concluded that the Print System was working as well as possible given its age and that there were no major issues that would halt the Print System's production.

32.     In fact, the printing volumes remained constant even during the time period OneSource claimed the Print System was non-operational.

33.     In contrast to Ricoh's significant efforts to ensure the Print System was fully operational, Ricoh's services team, based on multiple weeks of observing OneSource's print operations, found that between April 2023 and June 2023 OneSource was performing prohibited tasks including, but not limited to, failing to conduct proper print head and point cleanings.

34.     Ricoh's team made numerous maintenance improvements to the Print System to improve print quality immediately following OneSource's complaints, but OneSource continued to hamper Ricoh's services by refusing to implement the guidance provided on how to properly operate the Print System and continuing to perform prohibited tasks under the plain language of the Agreement and MSA.

35.     OneSource's contention that the Print System did not work "as advertised" is belied by the fact that the Print System continued to produce the same volumes of documents before, during and after the time period OneSource claimed Ricoh's maintenance service was not up to standards.

36.     In sum, OneSource had absolutely no basis at the time, and continues to have no basis, to withhold payments for services Ricoh provided to OneSource.  Ricoh satisfied all of its obligations during the time period when the parties' agreements were in effect.

37.     The principal balance owed by OneSource to Ricoh under the outstanding invoices totals $118,197.24. Currently, the total outstanding balance for services Ricoh provided to OneSource, inclusive of interest, is $120,728.17.

**Ricoh's Dispute Resolution Efforts**

38.     Under section 1.9 of the Agreement, the parties agreed to "allow the other reasonable opportunity to comply before [claiming] that the other has not met its obligations." Ex. A, at § 1.9.

39.     In accordance with that provision, Ricoh has made numerous attempts to obtain compliance by OneSource before seeking Court intervention. OneSource has continued to refuse to remit payment to Ricoh notwithstanding those attempts.

## COUNT I
## BREACH OF CONTRACT

40.     Ricoh incorporates by reference the preceding paragraphs as if set forth herein in their entirety.

41.     OneSource's Agreement and MSA with Ricoh are valid and enforceable contracts binding the parties to those contracts.  *See* **Exs. A & B**.

42.     Ricoh has satisfied all conditions precedent to enforcement of the Agreement and MSA.

43.     OneSource's refusal to remit payment to Ricoh for services rendered to the Print System violates the plain language of the Agreement and MSA.

44.     OneSource's breaches of contract are a direct and proximate cause of damages to Ricoh.

45.     All conditions precedent to the relief requested herein have been performed, have occurred, or have been waived.

46.     Ricoh has suffered, and will continue to suffer, monetary damages in an amount to be determined at trial, but in no event less than $120,728.17, together with pre and post judgment interest.

WHEREFORE, Plaintiff, Ricoh USA, Inc., respectfully requests that the Court grant judgment in its favor and against One2One Communications, LLC d/b/a OneSource on Plaintiff's Count One in an amount to be determined at trial, but in no event less than $120,728.17, together with pre and post judgment interest, costs and expenses, including

reasonable attorneys' fees, in connection with this action and to the extent permitted by law, and such additional relief the Court deems just and equitable.

## COUNT II
## ACCOUNT STATED

47.     Ricoh incorporates by reference the preceding paragraphs as if set forth herein in their entirety.

48.     Ricoh issued multiple invoices to OneSource in connection with the services it rendered to the Print System in 2022 through 2023.

49.     OneSource received and retained the invoices without objection.

50.     OneSource acknowledged its payment obligations under the invoices.

51.     Ricoh has been damaged as a result of OneSource's failure to pay the invoices in an amount to be determined at trial, but in no event less than $120,728.17, together with pre and post judgment interest.

WHEREFORE, Plaintiff, Ricoh USA, Inc., respectfully requests that the Court grant judgment in its favor and against One2One Communications, LLC d/b/a OneSource on Plaintiff's Count Two in an amount to be determined at trial, but in no event less than $120,728.17, together with pre and post judgment interest, costs and expenses, including reasonable attorneys' fees, in connection with this action and to the extent permitted by law, and such additional relief the Court deems just and equitable.

## COUNT III
## UNJUST ENRICHMENT

52.     Ricoh incorporates by reference the preceding paragraphs as if set forth herein in their entirety.

53. By virtue of OneSource's acceptance of Ricoh's services on the Print System without making full payment of the invoices, OneSource has been unjustly enriched.

54. Ricoh has been damaged as a result of OneSource's unjust enrichment in an amount to be determined at trial, but in no event less than $120,728.17, together with pre and post judgment interest.

WHEREFORE, Plaintiff, Ricoh USA, Inc., respectfully requests that the Court grant judgment in its favor and against One2One Communications, LLC d/b/a OneSource on Plaintiff's Count Three in an amount to be determined at trial, but in no event less than $120,728.17, together with pre and post judgment interest, costs and expenses, including reasonable attorneys' fees, in connection with this action and to the extent permitted by law, and such additional relief the Court deems just and equitable.

Dated: November 7, 2024               Respectfully submitted,

                                      **RICOH USA, INC.**


                                      By:   */s/Keith M. St. Aubin*

Keith M. St. Aubin (Ill. Bar No. 6324698)
Duane Morris LLP
190 S. LaSalle Street, Suite 3700
Chicago, Illinois  60603
Telephone:  312.499.6755 / Fax:  312.277.6820
Email: KStAubin@duanemorris.com

Lawrence H. Pockers (*pro hac vice forthcoming*)
Bryan Shapiro (*pro hac vice forthcoming*)
Duane Morris LLP
30 South 17th Street
Philadelphia, PA  19103
Telephone:  312.499.6755 / Fax:  312.277.6820
Email: LHPockers@duanemorris.com

BShapiro@duanemorris.com
*Attorneys for Plaintiff, Ricoh USA, Inc.*